Citation Nr: 1528214 
Decision Date: 06/09/15 Archive Date: 07/09/15

DOCKET NO. 12-27 398 ) DATE
 )
 )

On appeal from the
Department of Veterans Affairs Regional Office in Jackson, Mississippi


THE ISSUE

Entitlement to service connection for a cervical, thoracic, and/or lumbar spine disorder.


REPRESENTATION

Veteran represented by: Disabled American Veterans


WITNESS AT HEARING ON APPEAL

The Veteran


ATTORNEY FOR THE BOARD

K. Osegueda, Associate Counsel
INTRODUCTION

The Veteran served on active duty from June 1969 to June 1971. This matter comes before the Board of Veterans' Appeals (Board) on appeal from an August 2010 rating decision of the Department of Veterans Affairs (VA) Regional Office (RO) in Jackson, Mississippi.

The Board notes that the Veteran's appeal originally was limited to a claim for service connection for a neck and upper back disorder. However, in the August 2012 statement of the case (SOC), the RO broadened the issue on appeal to include complaints related to the low back. Therefore, the Board has recharacterized the issues on appeal as reflected on the title page.

In April 2015, the Veteran testified at a hearing before the undersigned Veterans Law Judge at the RO. A transcript of the hearing has been associated with the record.

This appeal was processed using the Veterans Benefits Management System (VBMS) paperless claims processing system. Accordingly, any future consideration of this Veteran's case should take into consideration the existence of this electronic record. In addition to the VBMS claims file, there is a Virtual VA paperless file associated with the Veteran's case. A review of the documents in the Virtual VA file reveals documents that are duplicative of the evidence in the VBMS file.

The appeal is REMANDED to the Agency of Original Jurisdiction (AOJ). VA will notify the Veteran if further action is required.

REMAND

The Veteran was afforded a VA spine examination in December 2009. However, the VA examiner's opinion was inadequate. Specifically, the examiner did not fully address the post-service April 2009 motor vehicle accident and ignored the Veteran's lay statements of continuous symptoms post-service discharge. The examiner did note that testing revealed a T6 compression fracture, and that he had "no indication or documentation that this compression fracture could be related to the military and to attempt to opine whether or not this compression fracture was present in the military would be resorting to mere speculation." The examiner did not address why speculation was required. 

In addition, as noted above, the RO included the Veteran's complaints regarding his low back in the August 2012 SOC; however, the issue was previously limited to the neck and upper back. Therefore, the December 2009 VA examiner did not address the lumbar spine in the examination report. With respect to the Veteran's lumbar spine, the service treatment records and the Veteran's hearing testimony indicate that the Veteran sustained a gunshot wound to the low back prior to service. Therefore, the examiner is specifically requested to address whether any such preexisting lumbar spine disorder was permanent worsened or aggravated beyond its natural progression during service.

Finally, the RO sought to obtain VA treatment records from Jackson, Mississippi from 1970 to 1999, but was notified that they were unavailable. The RO, however, sought the records under the Veteran's current name. The Veteran changed his name in 1984 and VA records should be sought under that name as well. 

Accordingly, the case is REMANDED for the following action:

1. Request that the Veteran provide the names and addresses of any and all health care providers who have provided treatment for his neck, upper back, and low back disorders. After acquiring this information and obtaining any necessary authorization, the AOJ should obtain and associate these records with the claims file.

2. Contact the appropriate VA Medical Centers, including the Jackson, Mississippi VAMC, and obtain and associate with the paper or virtual claims file all outstanding records of treatment. Request the records using the Veteran's prior name as noted on his service records. If any requested records are not available, or the search for any such records otherwise yields negative results, that fact must clearly be documented in the claims file. Efforts to obtain these records must continue until it is determined that they do not exist or that further attempts to obtain them would be futile. The non-existence or unavailability of such records must be verified and this should be documented for the record. Required notice must be provided to the Veteran and his or her representative. 

3. After any additional records are associated with the claims file, provide the Veteran with an appropriate examination to determine the etiology of his spine disorder. The entire claims file should be made available to and be reviewed by the examiner, and it should be confirmed that such records were available for review. Any indicated tests and studies must be accomplished and all clinical findings must be reported in detail and correlated to a specific diagnosis. An explanation for all opinions expressed must be provided. 

First, the examiner must identify all current cervical, thoracic, and lumbar spine disorders. Second, the examiner must provide an opinion, in light of the examination findings and the service and post-service evidence of record whether it is at least as likely as not (50 percent or greater probability) that each diagnosed cervical, thoracis, and lumbar spine disorder was caused or aggravated by the Veteran's military service. 

Third, the examiner must address whether any cervical, thoracic, or lumbar spine disorder clearly and unmistakably preexisted the Veteran's service, including a gunshot wound. If so, the examiner should state whether the preexisting disorder clearly and unmistakably worsened in severity during service.

In answering the questions, the examiner must address the following: 1) the Veteran's competent and credible lay statements regarding continuous symptoms since service discharge; 2) the multiple service records noting lumbar spine symptoms after a November 1969 car accident; 3) the Veteran's pre-service gunshot wound; 4) the April 2009 and May 2009 VA treatment notes documenting a motor vehicle accident and resulting symptoms; and 5) the December 2009 VA examination report.

4. Notify the Veteran that it is his responsibility to report for any scheduled examination and to cooperate in the development of the claim, and that the consequences for failure to report for a VA examination without good cause may include denial of the claim. 38 C.F.R. §§ 3.158, 3.655 (2014). In the event that the Veteran does not report for any scheduled examination, documentation must be obtained which shows that notice scheduling the examination was sent to the last known address. It must also be indicated whether any notice that was sent was returned as undeliverable.

5. Review the examination report to ensure that it is in complete compliance with the directives of this remand. If the report is deficient in any manner, the AOJ must implement corrective procedures. 

6. After completing the above action, and any other development as may be indicated by any response received as a consequence of the actions taken in the paragraphs above, the claim must be readjudicated. If the claim remains denied, a supplemental statement of the case must be provided to the Veteran and his representative. After the Veteran and his representative have had an adequate opportunity to respond, the appeal must be returned to the Board for appellate review.

The Veteran has the right to submit additional evidence and argument on the matters the Board has remanded. Kutscherousky v. West, 12 Vet. App. 369 (1999).

This claim must be afforded expeditious treatment. The law requires that all claims that are remanded by the Board of Veterans' Appeals or by the United States Court of Appeals for Veterans Claims for additional development or other appropriate action must be handled in an expeditious manner. See 38 U.S.C.A. §§ 5109B, 7112 (West 2014).



_________________________________________________
K. MILLIKAN
Veterans Law Judge, Board of Veterans' Appeals

Under 38 U.S.C.A. § 7252 (West 2014), only a decision of the Board of Veterans' Appeals is appealable to the United States Court of Appeals for Veterans Claims. This remand is in the nature of a preliminary order and does not constitute a decision of the Board on the merits of your appeal. 38 C.F.R. § 20.1100(b) (2014).